UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| KEVIN D. MORELAND and ) | |
| MELISSA MORELAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-13-S-579-NW |
| ) | |
| JOHN KOSKINEN, ) | |
| Commissioner of Internal ) | |
| Revenue Service, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Kevin and Melissa Moreland, a married couple, filed suit against John Koskinen, the Commissioner of the United States Internal Revenue Service ("IRS"), seeking review of the IRS's decision to deny them a First-Time Home Buyer Credit ("FTHBC") for tax year 2009.[1]  This case is before the court following a bench trial on April 14, 2014.  After reviewing all of the documentary evidence presented, hearing the live testimony, and judging the credibility of the witnesses, the court makes the following findings of fact and conclusions of law.

**I. FINDINGS OF FACT**

---

[1] *See* doc. no. 1 (Complaint).  The Complaint, which was filed on March 28, 2013, originally named Steven T. Miller, who then was the Acting Commissioner of the Internal Revenue Service. *See id.* ¶ 3.  Since that date, John Koskinen replaced Steven T. Miller as Commissioner of the Internal Revenue Service.  Therefore, Koskinen is automatically substituted as a defendant in Miller's place.  *See* Fed. R. Civ. P. 25(d).

**A.     The Killen Property**

Janie Moreland, who is the mother of plaintiff Kevin Moreland, purchased the property located at 71 County Road 363 in Killen, Alabama, on May 1, 2007 ("the Killen property").[2]  Janie Moreland testified that she purchased the Killen property with the intention of using it as an investment, but she has permitted Kevin Moreland and his wife, plaintiff Melissa Moreland, to live in the home located on the property rent-free since shortly after the date on which she purchased it.[3]

On April 30, 2010, Janie Moreland conveyed the Killen property to J. Noble Holland and Donna S. Holland by Warranty Deed, "in consideration of the sum of Ten and 10/100 ($10.00), and other good and valuable consideration."[4]  *On that same date*, plaintiff Kevin Moreland executed a "Real Estate Sales Contract" stating that he agreed to purchase the Killen property (in which he and his wife then resided) from Noble and Donna Holland for $85,000.00.[5]  The contract stated that the Hollands would finance the entire purchase price;[6] and, indeed, Kevin Moreland

---

[2] Doc. no. 22 ("Plaintiffs Reply to United States Response to Statement of Principal Facts and United States Proposed Stipulated Facts") (hereinafter, "Stipulated Facts") § B, at ¶¶ 1, 4. *See also* Court's Exhibit 1 (May 1, 2007 Warranty Deed).

[3] Trial Transcript, at 125-28.

[4] Defendant's Exhibit 1 (April 30, 2010 Warranty Deed). *See also* Stipulated Facts § B, at ¶ 2.

[5] Defendant's Exhibit 2 (April 30, 2010 Real Estate Sales Contract). *See also* Stipulated Facts § B, at ¶ 3.

[6] Defendant's Exhibit 2, ¶ 2.

granted Noble and Donna Holland a mortgage on the Killen property for $85,000.00 on June 8, 2010.[7] Kevin Moreland agreed to make payments to Noble and Donna Holland in the amount of $565.51 each month, with a final balloon payment of $82,783.31 due on June 1, 2013.[8] Noble and Donna Holland also executed a Warranty Deed on June 8, 2010, conveying the Killen property to Kevin Moreland.[9]

Kevin Moreland presented photocopies of receipts indicating that he made a total of four payments to Noble and Donna Holland for the Killen property: *i.e.,* one in each month from July to October of 2010.[10] There is no evidence of any additional payments,[11] and it is undisputed that Kevin Moreland did not make the balloon payment in June of 2013.[12]

---

[7] Defendant's Exhibit 8A (Real Estate Mortgage).

[8] Defendant's Exhibit 9 (June 8, 2010 Note with Balloon Payment). *See also* Defendant's Exhibit 7 (handwritten note); Trial Transcript, at 97-99 (explaining that Monty Allen, the real estate agent who prepared the real estate contract for this transaction, also prepared this handwritten note as an addendum to the contract); Defendant's Exhibit 10 (Payment Calculator and Amortization Schedule); Defendant's Exhibit 11 (Addendum to Note); Stipulated Facts § B, at ¶ 5.

[9] Defendant's Exhibit 8.

[10] Defendant's Exhibit 27 (Receipts). *See also* Trial Transcript, at 13-16.

[11] Both parties submitted as a trial exhibit a typed statement, signed by Donna Holland on February 22, 2011, and stating, "I Donna Holland do certified [*sic*] that Kevin or Melissa Moreland Have made their Mortgage payment of $565.51 on time since July 2010 to present." Plaintiffs' Exhibit 17; Defendant's Exhibit 25. Kevin Moreland acknowledged during his trial testimony that, despite what Donna Holland wrote in her statement, he had not made any payments since October of 2010. Trial Transcript, at 18-19. Donna Holland acknowledged that her signature appeared on the document, but she did not remember signing it, and she did not know what it meant. *Id.* at 114.

[12] Stipulated Facts § B, at ¶ 7. *See also* Trial Transcript, at 12-13.

Noble Holland died on January 1, 2011,[13] but neither Donna Holland nor any other member of the Holland family has attempted to collect any additional payments from Kevin Moreland, or to foreclose on the mortgage on the Killen property.[14] Kevin and Melissa Moreland never moved away from the Killen property after moving there in 2007; they have resided there continuously, from May 2007 until the present date.[15] There is no evidence that either Noble Holland or Donna Holland ever stepped foot on the Killen property, much less took possession of it.

Kevin and Melissa Moreland claimed a First Time Home Buyer Credit on their joint Form 1040X Amended Income Tax Return for 2009.[16] The IRS denied the credit on the basis that Kevin Moreland "[p]urchased the home from [his] mother through a lender who never had full possession of the home prior to the sale date of June 8, 2010."[17] The IRS also informed the Morelands that its research revealed "that some type of relationship may have already existed between Janie Moreland and the Hollands. That being the case, it is questionable whether or not this property was not intentionally bought by the Hollands just to be sold to you two months later."[18]

---

[13] Trial Transcript, at 116.

[14] *Id.* at 9, 17, 118-19.

[15] *Id.* at 30.

[16] Defendant's Exhibits 4 & 5. *See also* Stipulated Facts § B, at ¶ 8.

[17] Plaintiffs' Exhibit 6 (April 4, 2011 letter from the IRS), at 1 (alterations supplied). *See also* Stipulated Facts § B, at ¶ 9.

[18] Plaintiffs' Exhibit 14 (June 23, 2011 letter from the IRS), at 1. *See also* Stipulated Facts

## B.    The Leighton Property

On April 30, 2010, Noble and Donna Holland were the owners of the property located at 8355 Main Street in Leighton, Alabama ("the Leighton property").[19]  The house bearing that address had been owned and occupied by the Hollands for many years, and it was their principal residence until 1996, when they moved into the house on a contiguous parcel that bears the street address of 8335 Main Street.  Noble and Donna Holland conveyed the Leighton property to plaintiff Kevin Moreland's mother, Janie Moreland, by a Warranty Deed and Corrective Warranty Deed, both of which were dated April 30, 2010.[20]  *On that same date*, Mollie Holland, the daughter of Noble and Donna Holland, executed a Real Estate Sales Contract agreeing to purchase the Leighton property from Janie Moreland for $85,000:  the same price Kevin Moreland had agreed to pay Noble and Donna Holland for the Killen property.[21]  The contract stated that Janie Moreland would finance the entire purchase price.[22]  Indeed, Janie Moreland executed a "Contract for Deed" on June 21, 2010, agreeing to convey title to the Leighton property to Mollie Holland, but only after

---

§ B, at ¶ 9.

[19] Stipulated Facts § B, at ¶ 10.

[20] Defendant's Exhibits 13 (April 30, 2010 Warranty Deed) & 14 (April 30, 2010 Corrective Warranty Deed).  *See also* Stipulated Facts § B, at ¶ 11.  The deed was corrected to amend the legal description of the property.

[21] Defendant's Exhibit 15 (April 30, 2010 Real Estate Sales Contract).  *See also* Stipulated Facts § B, at ¶¶ 12-13.

[22] Defendant's Exhibit 15, ¶ 2.  Stipulated Facts § B, at ¶ 12.

Mollie Holland had paid her the total purchase price of $85,000, plus interest computed at 7% per annum.  Payment was to be made in monthly installments of $565.51, with a balloon payment of $83.783.33 due on June 1, 2013.[23]

Mollie Holland did not make any payments, for the Leighton property to Janie Moreland, including the balloon payment due on June 1, 2013.[24]  Even so, Janie Moreland has not attempted to collect any payments from Mollie Holland, or to otherwise enforce the terms of the June 21, 2010 Contract for Deed.[25]  There is no evidence that Janie Moreland ever set foot upon the Leighton property, much less assumed possession of it, after purportedly purchasing it from Noble and Donna Holland.[26]  Moreover, Mollie Holland did not move into the house located on the Leighton property after she purportedly purchased it from Janie Moreland.[27]  She testified that it has been vacant since 1996.[28]

Mollie Holland claimed a First-Time Home Buyer Credit ("FTHBC") on her

---

[23] *See* Defendant's Exhibit 19 (June 21, 2010 Contract for Deed); Defendant's Exhibit 16 (Settlement Statement); Defendant's Exhibit 17 (Amortization Table); Defendant's Exhibit 18 (Handwritten Note Memorializing Payment Terms); Trial Transcript, at 97-99 (explaining that Monty Allen, the real estate agent who prepared the real estate contract for this transaction, also prepared this handwritten note as an addendum to the contract); Stipulated Facts § B, at ¶ 14.

[24] Trial Transcript, at 133-35, 151-52.

[25] *Id.*

[26] *Id.* at 143.

[27] *Id.* at 160-61.

[28] *Id.* at 142.

Form 1040EZ Income Tax Return for 2010.[29]  The IRS granted her the credit, but she decided in early 2014 to return all the money she received because, after further consultation with the IRS, she determined she was not entitled to the credit and that "it wasn't right" for her to retain the money.[30]

## II. CONCLUSIONS OF LAW

Kevin and Melissa Moreland have asked the court to order the IRS to "allow [their] claim for the $8,000.00 first-time homebuyer credit under 26 U.S.C. 36 on their 2009 Federal income tax return."[31]  The statutory provision cited by the Morelands provides, in pertinent part:

> In the case of an individual who is a first-time homebuyer of a principal residence in the United States during a taxable year, there shall be allowed as a credit against the tax imposed by this subtitle for such taxable year an amount equal to 10 percent of the purchase price of the residence.

26 U.S.C. § 36(a).  The statute defines the term "first-time homebuyer" as "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies." 26 U.S.C. § 36(c)(1).  "[A]ny acquisition" of property can qualify as a "purchase" under the

---

[29] Defendant's Exhibits 23 & 24.

[30] Trial Transcript, at 147-49, 156-62.  *See also* Defendant's Exhibit 30.

[31] Doc. no. 1 (Complaint), at 10 (Demand for Relief, ¶ D).

statute, but *not if* the property is "acquired from a person related to the person acquiring such property (or, if married, such individual's spouse)." 26 U.S.C. § 36(c)(3)(A)(i) (alteration and emphasis supplied). The credit generally may not exceed $8,000, and it is only available for purchases of "a principal residence . . . on or after April 9, 2008, and before May 1, 2010." 26 U.S.C. §§ 36(b)(1)(A), 36(h)(1). Hence, the two "Real Estate Sales Contracts" dated April 30, 2010.

The decision of the IRS to deny the Morelands the FTHBC was legally correct, supported by the evidence, and cannot be disturbed by this court. The substance of a transaction, not its form, governs when calculating the federal income tax consequences of that transaction. As the Eleventh Circuit has stated,

> economic substance determines what is income to a taxpayer and what is not. *See Caruth Corp. v. United States*, 865 F.2d 644, 650 (5th Cir. 1989) (addressing, but rejecting on the case's facts, the argument that the donation of an income source to charity was a sham, and that the income should be reattributed to the donor); *United States v. Buttorff*, 761 F.2d 1056, 1061 (5th Cir. 1985) (conveying income to a trust controlled by the income's earner has no tax consequence because the assignment is insubstantial); *Zmuda v. Comm'r*, 731 F.2d 1417, 1421 (9th Cir. 1984) (similar). This economic-substance doctrine, also called the sham-transaction doctrine, provides that a transaction ceases to merit tax respect when it has no "economic effects other than the creation of tax benefits." *Kirchman*[ *v. Commissioner of Internal Revenue*,] 862 F.2d [1486,] 1492[ (11th Cir. 1989)]. Even if the transaction has economic effects, it must be disregarded if it has no business purpose and its motive is tax avoidance. *See Karr*[ *v. Commissioner of Internal Revenue*], 924 F.2d [1018,] 1023 [(11th Cir. 1991)] (noting that subjective intent is not irrelevant, despite *Kirchman*'s statement of the

> doctrine); *Neely v. United States*, 775 F.2d 1092, 1094 (9th Cir. 1985); *see also Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84, 98 S. Ct. 1291, 1303, 55 L. Ed.2d 550 (1978) (one reason requiring treatment of transaction as genuine was that it was "compelled or encouraged by business or regulatory realities"); *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S. Ct. 266, 267, 79 L. Ed. 596 (1935) (reorganization disregarded in part because it had "no business or corporate purpose").

*United Parcel Service of America, Inc. v. Commissioner of Internal Revenue*, 254 F.3d 1014, 1018 (11th Cir. 2001) (alterations supplied). Courts do not regard "'the simple expedient of drawing up papers' . . . as controlling for tax purposes when the objective economic realities are to the contrary." *Frank Lyon Co.*, 435 U.S. at 573 (quoting *Commissioner of Internal Revenue v. Tower*, 327 U.S. 280, 291 (1946)).

In the present case, the paperwork related to all of the real estate conveyances at issue appears to indicate, on its face, that Kevin Moreland purchased the Killen property from Noble and Donna Holland, who are not related to him in any way. If the technical *form* of that transaction were the only relevant consideration, Kevin and Melissa Moreland might be entitled to the receive the FTHBC. However, when viewed as a whole and in the light of all of the *credible* evidence, it is clear that the *substance* of the transaction was very different from its form. In *substance*, Noble and Donna Holland engaged in a property swap with Janie Moreland for the purpose of making it *appear* that their respective children qualified for the First Time Home Buyer Credit. There was no actual transfer of the subject properties. Noble and


doctrine); *Neely v. United States*, 775 F.2d 1092, 1094 (9th Cir. 1985); *see also Frank Lyon Co. v. United States*, 435 U.S. 561, 583-84, 98 S. Ct. 1291, 1303, 55 L. Ed.2d 550 (1978) (one reason requiring treatment of transaction as genuine was that it was "compelled or encouraged by business or regulatory realities"); *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S. Ct. 266, 267, 79 L. Ed. 596 (1935) (reorganization disregarded in part because it had "no business or corporate purpose").

*United Parcel Service of America, Inc. v. Commissioner of Internal Revenue*, 254 F.3d 1014, 1018 (11th Cir. 2001) (alterations supplied). Courts do not regard "'the simple expedient of drawing up papers' . . . as controlling for tax purposes when the objective economic realities are to the contrary." *Frank Lyon Co.*, 435 U.S. at 573 (quoting *Commissioner of Internal Revenue v. Tower*, 327 U.S. 280, 291 (1946)).

In the present case, the paperwork related to all of the real estate conveyances at issue appears to indicate, on its face, that Kevin Moreland purchased the Killen property from Noble and Donna Holland, who are not related to him in any way. If the technical *form* of that transaction were the only relevant consideration, Kevin and Melissa Moreland might be entitled to the receive the FTHBC. However, when viewed as a whole and in the light of all of the *credible* evidence, it is clear that the *substance* of the transaction was very different from its form. In *substance*, Noble and Donna Holland engaged in a property swap with Janie Moreland for the purpose of making it *appear* that their respective children qualified for the First Time Home Buyer Credit. There was no actual transfer of the subject properties. Noble and

Donna Holland never took possession of the Killen property, and Kevin and Melissa Moreland never vacated it. Kevin and Melissa Moreland paid Noble and Donna Holland only a very small percentage of the money they purportedly owe for the property, and the Hollands never tried to collect from the Morelands. Similarly, Janie Moreland never took possession of the Leighton property, and Mollie Holland did not even move into that property after it had purportedly been transferred to her. Mollie Holland never paid Janie Moreland anything for the Leighton property, and Janie Moreland has never tried to collect anything from Mollie Holland.

Stated in terms that are most favorable to the parties involved, the only *substantive* transactions that took place were the transfer of the Killen property from mother (Janie Moreland) to son (Kevin Moreland), and the transfer of the Leighton property from parents (Noble and Donna Holland) to daughter (Mollie Holland). Stated less charitably, each family, in exchange for the sum of $8,000, concocted a scheme to defraud the United States government *via* the Internal Revenue Service. Under either construction, plaintiffs are not entitled to the First Time Home Buyer Credit.

### III. ORDER

In accordance with the foregoing, it is ORDERED, ADJUDGED, and DECLARED that plaintiffs, Kevin Moreland and Melissa Moreland, are not entitled

to a First-Time Home Buyer Credit for the 2009 tax year, and that they have and take nothing.  Final judgment is entered in favor of defendant.  Costs are taxed to plaintiffs.  The Clerk is directed to close this file.

    DONE this 17th day of April, 2014.

                                                                                              /s/ Lynwood Smith
                                                      United States District Judge